(Doc. Nos. 332, 333)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                           :
UNITED STATES OF AMERICA      :
                                           :         Crim. No. 11-740 (RBK)
              v.                           :         **OPINION**
                                           :
NICODEMO S. SCARFO, et al.,    :
                                           :
_____

**KUGLER**, United States District Judge:

        This matter comes before the Court on the motion of Defendant David Adler ("Adler") to

dismiss the portions of Counts One through Three of the Indictment relating to Section 10(b) of

the Securities Exchange Act of 1934, 15 U.S.C. §78j(b) and Rule 10-b5 promulgated thereunder,

17 C.F.R. §240.10b-5 (collectively, "Section 10(b)").  Adler contends that these charges depend

upon the Government's ability to classify Defendant Salvatore Pelullo ("Pelullo") as an

"executive officer" of FirstPlus Financial Group ("FPFG") under 17 C.F.R. 240.3b-7 ("Rule 3b-

7").  Adler maintains that Rule 3b-7 is unconstitutionally vague and cannot support criminal

liability.  On this basis, Adler moves the Court to dismiss all charges based upon Section 10(b)

or to compel the Government to provide the Grand Jury instructions of law relating to Section

10(b).  For the reasons below, Adler's motions are DENIED.

### I.  BACKGROUND

        The Government has charged Adler, who acted as outside counsel to FPFG, with

1

conspiring to violate Section 10(b).[1]  Section 10(b) provides in relevant part that "it shall be

unlawful for any person . . . to make any untrue statement of a material fact or to omit to state a

material fact necessary in order to make the statements made, in light of the circumstances under

which they were made, not misleading."  According to Adler, the "essence of the Government's

Section 10(b)-based contentions is that, with Mr. Adler's cooperation, FPFG failed to 'fully and

accurately disclose in its applicable SEC filings, the identities of individuals who exercised

control over FPFG and its subsidiaries, as well as the identities of individuals involved in related

party transactions with FPFG.'"  Adler Mot. Dismiss at 3.

       Based on his construction of the charges against him, Adler argues that the Government's

securities fraud conspiracy allegations derive solely from Pelullo's classification as an

"executive officer" of FPFG under Rule 3b-7.  Rule 3b-7 defines an "executive officer, when

used with reference to a registrant" as the "president, any vice president of the registrant in

charge of a principal business unit, division, or function (such as sales, administration, or

finance), <u>any other officer who performs a policy making function or any other person who

performs similar policy making functions for the registrant</u>."  17 C.F.R. 240.3b-7 (emphasis

added).   According to Adler, the Government relies exclusively on Rule 3b-7's "catch all"

provision highlighted above to deem Pelullo the "de facto Chief Executive Officer" and to

consequently classify the information omitted from public filings as related party transactions.

<u>See</u> Adler Mot. Dismiss at 5-9.  Because "the definition and scope of 'policy making functions as

the term pertains to an 'executive officer' under Rule 3b-7 has never been defined by the SEC, "

Adler argues that and that 3b-7 "insufficiently definite to warrant criminal liability."  <u>Id.</u> at 13.

On this basis, Adler moves to dismiss the securities fraud conspiracy charges that relate to

---

[1] A brief description of the overall case is included in the Court's September 19, 2012 Opinion (Doc. No. 297) and
need not be repeated here.  The Court will instead focus on the discrete issues relating to Section 10(b).

Section 10(b).

In support of his position, Adler notes United States v. Schiff, 602 F.3d 152 (3d Cir. 2010), which Adler states held that the term "high corporate executives" was too vague to merit imposing criminal liability for securities fraud.  Adler believes that Schiff is analogous to this matter and should guide the Court in finding that the securities fraud conspiracy charge hinges on an unconstitutionally vague regulation.  See Id. at 16-18.

In opposition, the Government counters that Adler's conspiratorial liability is not entirely dependent on the validity of Rule 3b-7.  Instead, the materiality of Pelullo's involvement with FPFG triggers Adler's conspiratorial liability.  The Government argues that "even if Pelullo was not an 'executive officer' under Rule 3b-7, that would not absolve Adler of liability for conspiring to conceal from investors Pelullo's control of FPFG or his self-interested role in the related party transactions."  USA Opp'n at 31.  The Government explains: "Adler and his coconspirators committed a fraud on investors by actively concealing Pelullo's control over FPFG following the takeover and by also concealing the related party transactions that resulted in millions of dollars of loss for FPFG."  Id. at 26.   These allegedly concealed facts were "highly material, particularly given Pelullo's two prior felony convictions, once for fraud and once for making a false statement to the SEC."  Accordingly, the Government asserts: "Adler's concealment of those material facts in FPFG's SEC filings violated Section 10(b) and Rule 10b-5 regardless of whether Pelullo was an 'executive officer' under Rule 3b-7."  USA Opp'n at 27.

On February 1, 2013, the parties appeared before the Court for oral argument on this motion.

## II.  LEGAL STANDARD

A motion to dismiss the indictment tests "the sufficiency of the indictment to charge an

offense" and is directed "only to the question of the validity of the indictment on its face." U.S. v. Winer, 323 F.Supp. 604, 605 (E.D.Pa. 1971). Accordingly, the Court must accept all the allegations of the indictment as true. Boyce Motor Lines v. U.S., 342 U.S. 337, 343 n.16 (1952); U.S. v. Nat'l Dairy Products Corp., 372 U.S. 29, 33 n.2 (1963). An indictment is sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." U.S. v. Kemp, 500 F.3d 257, 280 (3d Cir. 2007). An indictment may fail to state an offense "if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." U.S. v. Panarella, 277 F.3d 678, 685 (3d Cir. 2002).

### III. DISCUSSION

Applying the appropriate legal standard and considering the relevant law, the Court finds that the Indictment sufficiently charges Adler with conspiracy to commit securities fraud. Adler's "void for vagueness" argument appears to misconstrue the language of the Indictment and misapplies the legal requirements for Section 10(b) violations. Regardless of whether Pelullo can be classified as an "executive officer" under Rule 3b-7, the Indictment sufficiently alleges that Adler conspired to make material omissions and misstatements to the SEC. Adler's reliance on Schiff is misplaced, as Schiff (1) did not rely on any vagueness doctrine to affirm the district court's dismissal and (2) only addressed the legal standard for securities fraud, not conspiracy to commit securities fraud, with which Adler is charged. Even accepting Adler's vagueness argument, the Court would have no basis for dismissing the securities fraud conspiracy charges because the legal impossibility of securities fraud is not a defense to

conspiracy.  See U.S. v. Hsu, 155 F.3d 189, 204 (3d Cir. 1998).  Accordingly, the Court will deny Adler's motions.

### a.  Motion to Dismiss

Adler essentially argues that he cannot be liable for conspiracy because Rule 3b-7 was insufficiently definite to provide notice that Pelullo was an "executive officer" under the regulation.  In his related motion for grand jury instructions, Adler describes the Indictment as charging him with "conspiring to violate Section 10(b) by either knowingly or recklessly disregarding Mr. Pelullo's 'executive officer' status when Mr. Adler assisted FPFG in preparing its public filings."  Adler Mot. Grand Jury Instructions at 2.  This argument misconstrues both the language of the Indictment and the relevant legal standard for Section 10(b) prosecutions.

Under Section 10(b), liability attaches when an individual "make[s] any untrue statement of a material fact or . . . omit[s] to state a material fact necessary in order to make the statements made . . . not misleading."  The law is well-settled that a fact is material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438 (1976)).  Despite this definition of materiality, Adler urges the Court to shift its focus toward the question of whether Pelullo could be considered an "executive officer" under the securities regulations.  The Court declines to do so.  The Indictment alleges that Pelullo "assumed control of FPFG through its new figurehead board of directors and executive officers."  Indictment, Count 1 ¶42.  The Indictment further alleges that Defendant Nicodemo Scarfo and Pelullo created and executed "legal services and consulting agreements that were used to misappropriate and funnel money out of FPFG and into accounts controlled by

the Enterprise on a monthly basis."  Id.  Regardless of whether Pelullo was an "executive

officer" under Rule 3b-7, there is a substantial likelihood that a reasonable investor would have

viewed his alleged involvement as significantly altering the "total mix" of information available.

Adler argues that the Government's "decision to characterize Mr. Pelullo as FPFG's 'de

facto Chief Executive Officer'. . . is intended to trigger disclosure obligations that would not

otherwise exist under the securities regulations."  Adler Mot. Dismiss at 5.  This is simply not the

law.  The Government may sufficiently indict for the failure to disclose Pelullo's alleged

involvement with FPFG in violation of Section 10(b) as long as the Government alleges that the

omitted information was material, not that is necessarily violated a specific regulation.  See In re

WorldCom, Inc. Securities Litigation, 346 F. Supp.2d 628, 689 (S.D.N.Y. 2004) (stating that

withholding information "can constitute material omissions, even where no regulation expressly

compels the disclosure of such."); see also S.E.C. v. Pace, 173 F. Supp.2d 30, 32-33 (D.D.C.

2001) (holding that an illegal transfer of money was material and needed to be disclosed even if

Regulation S-K did not require it).[2]

### 1. *Distinguishing Schiff*

Adler relies extensively on United States v. Schiff, 602 F.3d 152 (3d Cir. 2010), to

support his void for vagueness argument, but that case is largely irrelevant to the instant motion.

In the cited portion of Schiff, the Third Circuit reviewed a district court's decision to dismiss

specific portions of the indictment charging the defendant with securities fraud.  The government

theorized that the defendant had a general fiduciary duty to rectify the allegedly material

misstatements of another corporate executive, which translated into a duty to disclose.  See Id. at

160-63.  The government then "attempt[ed] to cabin this duty to an extent" by arguing that it was

---

[2] Adler attempts to distinguish civil cases involving alleged Section 10(b) violations as inapposite.  See Adler Mot.
Dismiss at 11, n.12.  Adler cites no authority, however, suggesting that the standard for materiality varies between
the criminal and civil context.

only owed by "high corporate executives," a term not defined by the securities regulations.  Id. at

164.  The Third Circuit panel rejected this argument explaining that not only did the "general

fiduciary duty" proposed by the prosecution lack sufficient supporting authority, but that even

accepting the Government's theory, the term "high corporate officers" was too vague to provide

notice of when such a duty would apply.  Id. at 163-165.

Schiff is not analogous to this case.  The Schiff opinion only analyzed the sufficiency of

securities fraud charges, as the district court had ruled that the conspiracy to commit securities

fraud theory was viable.  Because the appellate court was determining the sufficiency of

securities fraud allegations, the court questioned whether Schiff had any duty to disclose the

allegedly material information to the investing public. See Schiff, 602 F.3d at 162 (citing Basic,

485 U.S at 239 n.17.) ("Absent a duty to disclose, silence is not fraudulent or 'misleading under

Rule 10b-5.'").  In contrast, Adler can be guilty of conspiracy to commit securities fraud without

ever having owed such a duty himself.  The comparison to Schiff is also inappropriate because

Schiff did not declare a regulation unconstitutionally vague.  Instead, the court rejected the

government's weak theory of liability that had minimal legal support and no logical limiting

principle.  Therefore, Schiff provides little, if any, support for Adler's motion and his reliance on

its holding is misplaced.

    2.  *Legal Impossibility Not a Defense*

Even if the Court were convinced that Rule 3b-7 is unconstitutionally vague,[3] Adler

would still not be entitled to dismissal because "legal impossibility is not a defense to

---

[3] It should be noted that although the Court makes no ruling on the validity of Rule 3b-7, the Court is skeptical that the term "policy making functions" is unconstitutionally vague.  The Supreme Court has clarified that "the constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute."  United States v. Harriss, 347 U.S. 612, 618 (1954).  The Court remains unconvinced that a "person of ordinary intelligence" would not understand the term "policy making functions" given its ordinary use and dictionary definition.

conspiracy." U.S. v. Hsu, 155 F.3d at 204.  The Third Circuit has explained that with conspiracy charges, the "illegality of the agreement does not depend on the achievement of its ends" because the "conspiratorial agreement itself, and not the underlying substantive acts" forms the basis for a conspiracy.  Id. at 203.  Therefore, it is "irrelevant that the commission of a substantive offense may have been legally impossible for the conspiracy to achieve all along."  Id.

For the purposes of the securities fraud conspiracy charge, the Government need only allege that Adler entered into an agreement to commit securities fraud, not prove that he could have been convicted of such an act.  See U.S. v. Heron, 323 Fed. Appx. 150, 154 (3d Cir. 2009) (stating that whether a defendant "was an insider for purposes of a hypothetical securities fraud action, and therefore legally capable of engaging in securities fraud, is irrelevant to the conspiracy charge.").  Thus, the Government has sufficiently alleged that Adler engaged in a conspiracy to commit securities fraud and Adler's motion to dismiss is denied.

### b. Motion for Grand Jury Instructions

Adler also moves the Court to order the Government to provide portions of the grand jury transcripts.  Adler argues that in order to charge him with conspiracy to commit securities fraud, the Government "would have had to instruct the Grand Jury as to the applicable definition of 'executive officer' under Rule 3b-7 and, in turn, instruct the Grand Jury as to the applicable definition of 'policy-making functions.'"  Adler Mot. Grand Jury Instructions at 2.  Adler contends that because the term is not defined by "any securities regulation, judicial decision, or pronouncement by the Securities Exchange Commission," there is a presumption that the Government provided the Grand Jury "with erroneous or misleading Section 10(b)-related instructions."  Id.

As a matter of public policy, grand jury proceedings must generally remain secret in the

absence of a compelling necessity.  United States v. Proctor & Gamble, 356 U.S. 677 (1957).

Federal Rule of Criminal Procedure 6(e) allows a court to authorize disclosure of a grand jury

matter "at the request of a defendant who shows that a ground may exist to dismiss the

indictment because of a matter that occurred before the grand jury."  Fed. R. Crim. Proc. 6(e).  In

order to obtain such relief, however, "a party must show a particularized need for that

information which outweighs the public interest in secrecy." United States v. McDowell, 888

F.2d 285, 289 (3d Cir. 1989) (citing Proctor & Gamble, 356 U.S. at 683.).  Adler has not

demonstrated such a need.  As previously explained, even if the Court accepted Adler's

vagueness argument, the Court would have no grounds to dismiss the Indictment.  Therefore, the

Court will also deny Adler's motion for Grand Jury Instructions.

## IV.    CONCLUSION

For the foregoing reasons, Adler's Motions to Dismiss and for Grand Jury Instructions

are **DENIED**.  An accompanying order shall issue today.


Dated:  2/19/2013                              /s/ Robert B. Kugler
                                               ROBERT B. KUGLER
                                               United States District Judge